Good morning, your honors. May it please the court. My name is Rachel Paulos. I'm a partner at DLA Piper. Along with my co-counsel, Robert Richmond, and our colleague, Julian Stone, we represent Mr. Gammell. Mr. Gammell does maintain all the arguments articulated in his briefs, your honors. And respecting the court's prerogative to determine the issues for oral argument, I would like to focus on the following two issues. And reserve five minutes for rebuttal time, please. First, Mr. Gammell contests his ACCA classification because his 1984 Minnesota aiding and abetting burglary conviction is under a statute that was substantially broader than the generic aiding and abetting understanding. The issue is whether the district court failed to apply the Supreme Court's decision in Gonzalez versus Duenas-Alvarez. Second, the indigent and elderly Mr. Gammell contests the nearly $1 million restitution order in this case. The issue is whether the government's proof in this case flunked the standards of the Supreme Court's decision in Lagos, the MVRA, and Eighth Circuit case law. Your honors, with this case, the government asserts the tailored categorical analysis may never be applied to an aiding and abetting conviction as an ACCA predicate as a matter of law. That specific contention has been considered and rejected by the United States Supreme Court, and we're not aware of a single case in the country that has embraced such a radical position. The principle at stake here is the fidelity of this court's jurisprudence under the ACCA framework established by the Supreme Court. The government's proposed new rule would infect with legal error every aiding and abetting and alternative liability case to appear in this circuit. And specifically, your honors, the Supreme Court rejected the government's theory in Duenas-Alvarez, which we respectfully ask the court to consider and apply here. Indeed, the government's whole argument is predicated on its failure to wrestle with Duenas-Alvarez and the consequences that it has in that case and in others, like James, where the court similarly undertook a categorical analysis of generic crimes. To our knowledge, no litigant in the Eighth Circuit has challenged the generic definition of an enumerated offense under the Taylor framework as applied to the ACCA underlying conviction. The cases that the government cites on these issues, your honors, have nothing to do with the specific question before this court, which is, is it aiding and abetting theory of liability to be so broad so as to remove a predicate crime from beyond or make it go beyond the generic definition embraced by the Supreme Court, embraced by the common law, embraced by federal statutes, embraced by other states? Counsel, what's your best Minnesota case that backs up your contention that the aiding and abetting is overbroad? I've read those cases. With respect, there's different lines of thinking in there. And honestly, I'm having a hard time pinning down what the rule is in Minnesota. I think the Minnesota Supreme Court has had difficulty pinning down what the rule is, your honor. But it seems that the modern understanding of aiding and abetting in Minnesota embraces two things that are not consistent with generic aiding and abetting. First of all, and to answer your question specifically, your honor, I think the best case is Parker, which we cited in our brief. Would you like the citation to that, your honor? I think I have it. Thank you. And Ostrom also mentions some of the concepts that are problematic. So the first problematic concept is that Minnesota does not require an overt act, which is fundamental under Rosemont. Aiding and abetting consists of intent as well as action. Minnesota does not require action. And in fact, defendants, including in the Parker case, were found guilty by merely being present. Secondly, Minnesota conflates conspiracy and aiding and abetting. And the difference, of course, between those two is that conspiracy, again, does not require an overt act by a particular defendant. Whereas aiding and abetting does require the defendant convicted to have committed an action, as well as to have the necessary intent. So that's the problem with how Minnesota is applying the aiding and abetting statute. The bigger issue here, the legal issue, is the framework that the United States Supreme Court set out in Duenas-Alvarez, where the litigant there challenged his aiding and abetting theft conviction, saying that because California defined aiding and abetting too broadly, that that took it out of ACCA predicate crimes. And the Ninth Circuit embraced, really, the mirror opposite of the government's argument in this case, and took a radical position saying, no aiding and abetting case can ever be an ACCA predicate. That's not the argument that we're making here, Your Honors. We are saying, consistent with Duenas-Alvarez, it is possible that a state aiding and abetting statute may be so broad as to put an underlying conviction beyond the reach of the ACCA. So the litigant in Duenas-Alvarez made this argument. He attempted to differentiate between California's version of intent and the federal or generic understanding of intent. And the Supreme Court looked at the California statute. That examination would not have been necessary if you accept the government's proposition here that aiding and abetting is never relevant. Nevertheless, in Duenas-Alvarez, the Supreme Court looked at that statute, subjected it to a Taylor categorical analysis, and said, because over 40 states define intent in aiding and abetting the same as California does here, we are not going to grant relief to this particular defendant. So it's true that the Duenas-Alvarez defendant lost the factual battle. However, he won the legal war that is the same war that Mr. Gamble is waging here, which is the court does need to consider whether a theory of liability places a statute beyond the reach of the ACCA. Well, are you referring to the second degree burglary? Yes, Your Honor. And as I understand it, you're not making the argument that second degree burglary is not a predicate offense. We are not making that argument, Your Honor. Nor are we making the argument that all aiding and abetting or alternative liability statutes are removed. We're saying it needs to be considered. You're saying that in Minnesota, it's possible for someone to be convicted of aiding and abetting second degree burglary without that person committing an overt act. Yes, Your Honor. Well, what difference does that make if the substantive offense qualifies? Well, for example, to use example, we Historically isn't aiding and abetting, isn't it viewed whatever is required in a particular jurisdiction to constitute aiding and abetting historically hasn't aiding and abetting simply been viewed as another way of committing the substantive offense? Well, the Supreme Court considered that question in Duenas-Alvarez, Your Honor. And it said historically, the answer is usually yes. But sometimes the answer is no. So using the categorical analysis, not looking at the particular facts of this crime, but looking at the categorical analysis and looking at the elements as Minnesota defined them, Minnesota statute still has to fit within historical aiding and abetting. We're saying in this case, it does not. So the difference that it makes, Your Honor, to use an example that we used before the district court, if Minnesota defined aiding and abetting as aiding, counseling, procuring, or living with a burglar, one could understand how that statute would exceed the traditional understanding of aiding and abetting. That living with puts it beyond the reach of the ACCA. There needs to be something special about the statute, to use the words of the Supreme Court in Duenas-Alvarez, to put it beyond the ACCA. We're saying that something special is met here because of how Minnesota defines aiding and abetting. So if we agree with you, I'm trying to understand what the practical consequences might be. So would we essentially be eliminating all otherwise qualifying predicate offenses that were committed in Minnesota while this aiding and abetting statute was in effect? So from 1984, I don't recall when the statute changed. But is that where we're going? If we accept your argument, if we walk through the door that the Supreme Court has opened here, is that the result? Well, I think under Taylor, the result is that the state statute is subjected to that comparison. And it is possible that if the statute exceeds the bounds of the generic definition, as it did in Taylor, another Eighth Circuit case, that those convictions cannot stand as an ACCA predicate. That does not mean a defendant gets off scot-free. It does not mean that there are no consequences for his action. It simply means that he's not an ACCA criminal. Your Honors, with the court's leave, I'd like to reserve the balance of my time for rebuttal. Thank you. That will be fine. Mr. Jenrick, may it please the court. Good morning, Your Honors. Good morning, counsel. Assistant US Attorney David Jenrick from the District of Minnesota on behalf of the government. I would like to just briefly start with the restitution issue, because I do think the first issue, the ACCA, will probably take the most of the time based on the court's questions. But I just did want to say, with respect to restitution, that while relying primarily on the briefs, Judge Wright's restitution order in this case was extraordinary. And it was based on a more than adequate record, establishing by more than required preponderance, that these victims suffered the losses that she found. This isn't a Lagos case. In Lagos, the defendant defrauded a lender and stole money. And money was the proper value there of the property that was damaged, lost, or stolen. Lagos also, the victims also sought to recover additional restitution under subdivision A-4, which the court didn't permit because it wasn't connected with the criminal prosecution. Here, Judge Wright was tasked with determining what the proper measure of loss was, where Gamow had repeatedly impaired the reliability, functionality, and accessibility of their websites. And she did not abuse her discretion, which is the standard applied for her determination of what loss controls, and including labor costs and DDoS mitigation services, based on the nature of Gamow's offenses. Unless the court had additional questions outside the briefing on restitution, I'd like to turn to the ACCA issue. With respect to ACCA, and respectfully to Mr. Gamow, neither the contention that Mr. Gamow was convicted of aiding and abetting burglary, nor the contention that Minnesota aiding and abetting is substantially broader than generic aiding and abetting is true. You agree, counsel, though, that some of the language in Duenas-Alvarez opens the door to this sort of argument, if not in this case, in another case? Here's what I think about Duenas-Alvarez, and I'd like to start with this court's language in Selene. For while Gamow characterizes the government's position that liability under a theory of aiding and abetting is irrelevant, as extreme, that is, in fact, this court's position. And that's a direct quote from the Selene decision, which says it's irrelevant whether a defendant is convicted under an aiding and abetting theory of liability. Selene not only comes after Duenas-Alvarez, but Selene relies upon Duenas-Alvarez. This court cites and quotes and follows Duenas-Alvarez in Selene. So the characterization that the government is taking some sort of extreme position is, frankly, just off base. The government is asking this court to apply its own precedent. It's also not true that no case in this circuit has raised the challenges that Mr. Gamow raises. In fact, in the Douglas case, they were raised, and just this week, the court issued a per curiam order citing Selene for the proposition that it's irrelevant whether a defendant is convicted under an aiding and abetting theory. So in response to your question, Your Honor, Selene and this court has already construed Duenas-Alvarez. And in the government's view, construed it properly, but really, the government's view is beside the point. That is the court's law. And it's been applied as recently as the Douglas case just a few days ago. With respect to the Duenas-Alvarez opinion, Your Honor, and what the government believes is going on in Duenas-Alvarez. In Duenas-Alvarez, the Supreme Court identifies four categories of liability for criminal offenses. And they say they have canvassed all 50 states, aiding and abetting statutes, as well as federal law, and concluded that all 50 states treat aiders and abetters, falling into categories two and three of those four categories, as liable for the acts of the principal. And as Judge Shepard, you pointed out, not just historically, but uniformly, the court says in Duenas-Alvarez, the treatment of aiders, abetters, and American jurisprudence holds them liable for the acts of the principal. There is no dispute in this case, as you pointed out again, Judge Shepard, that second degree burglary, under the version of the statute Mr. Gamow was convicted of, is an ACCA predicate offense. There also should be no dispute that Mr. Gamow was not convicted of aiding and abetting second degree burglary. He was convicted of second degree burglary under an aiding and abetting theory of liability. And under this court's jurisprudence, including Selene, it goes back further than Selene. The court in Brown, the year before Selene, that's 550 Fed Third 724, recognized the same principle. Mr. Gamow has been convicted of an ACCA predicate that should be indisputable, and therefore is subject to the ACCA penalties imposed by Judge Wright. There are a number of other, so what goes on in the rest of the Duenas-Alvarez opinion? Duenas-Alvarez says, I agree that these aiding and abetting statutes subject me to liability as if I were the principal. But he says the California natural and probable consequences doctrine creates a subspecies of theft under the California Vehicle Code that takes it outside of generic theft. And the comparisons undertaken in Duenas-Alvarez are about whether California applied its natural consequences doctrine in a way that takes California Vehicle Theft Code outside of generic theft. There is nothing at issue here that takes the second degree burglary statute here outside of what the Supreme Court defined burglary as in Taylor, which is the unlawful entry of a building or structure with intent to commit a crime. Nothing takes what Gamow did outside of the purview of second degree burglary or Taylor. And although Gamow was convicted of second degree burglary under an aiding and abetting theory of liability, in Docket 99, Exhibit 2, you'll see that he actually was convicted as a principal as well. He pled guilty to facts that made him guilty as a principal. He was charged as a principal and an aider and abetter. And he pled guilty straight up to a complaint that charged both. But that's really beside the point as to whether he was convicted as a principal or aider and abetter. He was convicted as a principal. But it doesn't matter under the law. And that's the point of Duenas-Alvarez and this court's opinion in Selim. There was a lot going on in Duenas-Alvarez, which remember was not an ACCA case, was not about Johnson, and was not about generic burglary certainly. It was an immigration case addressing natural and probable consequences doctrine in California. Now look, if any state, whether aiding and abetting or not, defines burglary to mean cohabitation, there's going to be a problem. If the statute's amended beyond what aiding and abetting was at the time, say, of Duenas-Alvarez, or if Minnesota adopts some other doctrine that takes burglary outside of generic burglary as defined in Taylor, this court is going to retain the authority to review that state law. But that's not what it's issue here. And the second half of the Duenas-Alvarez opinion was really set apart from Duenas-Alvarez's application of historical jurisprudence on aiding and abetting. Absent other questions from the court on Duenas-Alvarez, I'd just like to make one final point on that case. Both Valdivia Flores in the Ninth Circuit and Gamon as brief cite to this language from Duenas-Alvarez. Quote, in the criminal activities of these aiders and abetters of a generic theft must themselves fall within the scope of the term theft in the federal statute, close quote. And I'm not gonna be able to unpack it all, but I do wanna make this point. What the court was saying there was not that an aider and abetter activities have to satisfy the generic definition of burglary, i.e. the aider and abetter has to enter the structure with intent to commit. That's what Duenas-Alvarez was arguing what the Ninth Circuit held and was reversed in the Supreme Court. The Supreme Court then reviewed the question after the Ninth Circuit opinion. The question before us is whether one who aids or abets a theft falls like a principle within the scope of this generic definition. When the Supreme Court said the criminal activities of these aiders and abetters of a generic theft must themselves fall within the scope of the term theft in the federal statute, they were answering that question. They were answering the question of whether aiders and abetters are liable for the acts of the principle. They weren't creating a separate standard that said the activities of the aiders and abetters have to fall within the scope of generic theft. And I'm gonna leave it at that, but I would ask the court upon review of the case and its submission really to look at how Valdivia Flores relies on that sentence to build out its opinion and how really that sentence is embedded in a different context in Duenas-Alvarez in the section before they turn to the questions about naturals and probable consequences. Gamble indicates that with respect to whether it's substantially overbroad, it clearly, Minnesota law is not substantially overbroad as to aiding and abetting. And let's take each of the contentions in order. First, that Minnesota law doesn't require an overt act and that Parker is the best case for that. Gamble argued to you a few moments ago that Parker was convicted based on his mere presence at the scene. Here's what the Parker decision says. We conclude that defendant's close association with the other men who appeared in the stolen car in front of the victim's house before and after the crimes charged were committed and the fact that the three of them were apprehended fleeing from the convertible stolen from the victim all tend to reasonably justify the conclusion that defendant joined with the other two cohorts in the common purpose of assaulting the victim, robbing him and stealing his automobile. Parker is not a mere presence case. There is no case in the state of Minnesota and recall that Duenas Alvarez says if you're gonna argue that Minnesota applies its law broader than generic, you've gotta come up with a case. There's no case that says you're liable for a burglary because you're present at the scene or to use another enumerated offense, if you're home during an arson, you're guilty of arson because you were present. That's what mere presence means. The way Minnesota law and Rosemont distinguish mere presence is presence married to an intent to aid the offense and a reading, a straightforward reading of Parker demonstrates that Parker is entirely consistent with Rosemont as a matter of law and that in its application, Parker is not a mere presence case. Ostrom is also a good recitation of the law. Recall that in Rosemont, the court said that aiding and abetting encompasses all acts or all assistance including acts, encouragement, support or presence. There's no question that the Supreme Court recognized that presence is part of an appropriate aiding and abetting application but you've also gotta have the intent to aid and there's no question that throughout all of the cases cited in both parties' briefs under the law of Minnesota that both of those need to be present. With respect to conspiracy, the defendant in his brief cites cases, federal cases that say, well if you're convicted of conspiracy, that's not good enough under the ACCA and that's certainly right but the reason for that is because conspiracy is an inchoate offense and aiding and abetting requires the completion of a completed crime. That's where the aider and abetter becomes liable for the acts of the principal. If the principal commits a second degree burglary and is aided and abetted, the aider and abetter is liable for the acts of the principal. A conspiracy doesn't involve a completed offense and that's how cases like Dieter or Dieter out of the 10th Circuit depending on how it's pronounced distinguish those conspiracy cases. The fact that the Minnesota statute includes the term conspiracy also doesn't either end the inquiry or control it. Minnesota statute includes other terms that aren't contested here like advises or counsels. If I advise someone to commit a crime, if I counsel them, hey, commit a crime or if I say, hey, I'll commit the crime with you, those are not substantially different in terms of the encouragement, to use Rosemond's term, that the aider and abetter is providing to the principal. So even, and there's also no case that the defendant can cite that shows that Minnesota statute including conspiracy somehow takes it outside of the mill run application of aiding and abetting cases. So even if this court engages in the inquiry that would be in contraposition to Selene, the government submits, frankly, your honors, it's really not a close question as to whether Minnesota law substantially comports with generic aiding and abetting liability. It clearly does as to requiring an affirmative act that can include the act of being present at the scene with the intent to advance the crime. And it clearly does with respect to including conspiracy as among the means by which a defendant can act, encourage, support, establish his presence to assist the principal. The practical implications, your honor, are potentially severe. If aiding and abetting, if Minnesota aiding and abetting is declared to be overbroad in all circumstances, we'd have to get into whether aiding and abetting is implicit in every charge. But it's not true that the Ninth Circuit has said that no aiding and abetting statute passes muster. They said the Washington aiding and abetting statute doesn't pass muster. So it's not that the Ninth Circuit takes an extreme position that no aiding and abetting counts. You'd also be at liberty to look at the Shepard documents and determine whether a defendant was convicted as a principal or an aider and abetter. So there are ways to narrow it. The Ninth Circuit has also narrowed Valdivia Flores to apply only to enumerated offenses and not to force clause offenses. So there are a variety of issues that lay in wait there, your honor. But potentially, by taking that step that's not mandated by Duenas-Alvarez and not permitted by Selene, yes, it opens the door to eviscerating all convictions under Minnesota law as ACCA predicates. I see my time is up. Thank you very much, your honors. I'd otherwise submit the matter on the government's brief. And thank you. Thank you. How much time does Ms. Paulus have? Four minutes and 53 seconds, your honor. You're welcome. Your honor, to go back to the question that your honor, Judge Shepard asked me about the difference between the Minnesota statute and the federal statute. The federal definition or understanding of aiding and abetting is contained in Rosamond. And it clearly embraces both action and intent. And it says, quote, an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime. That's what Minnesota lacks is a definition that includes action and intent. Secondly, I think counsel just conceded the legal issue that it is possible for a state to define a theory of liability so broadly that it takes a crime out of the ACCA predicate possibility. The cases that he cites, your honor, are not on point precisely because of that distinction. Selene, I read the brief in Selene. The defendant does not make. The example you gave earlier of the statute that would permit someone to be convicted of a crime under an aiding and abetting theory because they cohabit with the principal offender. I mean, there you'd be talking about something that would raise issues of like due process, wouldn't it? I mean, it would be the question of whether it's even a crime. Whether it's so tangential that the state no longer has the authority to criminalize the conduct. Just because one constitutional provision is violated doesn't mean another isn't as well, your honor. We're saying that that definition would not comport with the Supreme Court's framework in Taylor. That framework was not challenged in Selene. The defendant in Selene never made the argument that we're making here. What he did was he challenged aiding and abetting generally as a predicate for ACCA. That's not what we're doing. He never asked the court to subject the aiding and abetting statute to a Taylor analysis. And that's very clear, not only from the opinion, but from the brief that the defendant submitted in that case. As well, Douglas submitted this week. We agree. This analysis applies to enumerated offenses. Douglas did not involve an enumerated offense. Moreover, it was raised for the first time on a habeas petition. It was unpublished. It was per curiam. And it involved robbery, not burglary. Unless the court has further questions on why this analysis must be undertaken in the case of enumerated offenses, I'd like to move quickly to the restitution issue, Your Honor. One question. Do you maintain your argument on the aggravated robbery issue in light of the Stokeling decision? We do, Your Honor. And in part because Minnesota does not require force at the time of the robbery, which is the distinction that saved the Florida statute in Stokeling. With respect to restitution, Your Honor, the government did not submit a well-documented record of costs that are allowable under the MVRA. The MVRA is a statute that must be strictly construed. District court judges do not have the authority to independently order expenses. The expenses in this case most egregiously involved expenses for upgrades to put victims in positions that were better than the positions that they occupied before the attacks. And repeatedly, if you look at the transcript of the evidentiary hearing in this case, repeatedly, the government concedes that victims admitted they were seeking to insulate themselves not just from Mr. Gamble, but from any and all future attackers. Repeatedly, they admitted that they upgraded their entire infrastructure to prevent future attacks. Repeatedly, they admitted that because Mr. Gamble put them on notice of vulnerability generally, which is just the state of the cyber world that we live in, that they claimed costs that, quote, would not go away. That is not the standard that the MVRA sets out. Claimants may claim costs to repair their property or to put them in a position that they occupied before the damage, but they cannot claim costs for infrastructure that puts them in a position better than they occupied before the attacks. The second problem with the restitution order is that the costs were not documented under this court's line of cases and Sheikha, Haile Selassie, and Chalupnik. Those costs are not allowed. And finally, in contravention of Lagos, the government submitted internal investigation costs, which again, are not allowed. I see my time has expired unless the court has further questions. Thank you very much. Thank you, Your Honor. Thank you, counsel, for your arguments. The case is submitted. You may stand aside.